| 36 | 109 |
| 47 | 634 |

STEPHEN HENDERSON, Respondent, v. ST. LOUIS AND HANNIBAL RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, April 29, 1889.

Damages: KILLING STOCK ON RAILWAY. In an action under Revised Statutes, section 809, if it appear that the plaintiff's cattle were killed on a public road crossing, he cannot recover, unless the evidence tends to show, that they came upon such crossing from some place, which it was the railroad company's duty to protect by lawful fence or cattle-guard.

*Appeal from the Pike Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED.

*Theodore G. Case* and *James H. Orr*, for the appellant.

The railway was not required to fence its track at the point where the animals entered upon the track. The statutory rule is, that railroad companies are not required to fence their roads at public crossings, and this embraces highways *de facto* as well as *de jure*. *Luckie v. Railroad*, 76 Mo. 639; *Brown v. Railroad*, 20 Mo. App. 427; *Ehret v. Railroad*, 20 Mo. App. 258. Under section 809 of the Revised Statutes of Missouri, a railway company is not liable in double damages for cattle killed at the crossing of a private road. *Walton v. Railroad*, 67 Mo. 56; *Sullivan v. Railroad*, 72 Mo. 196. The court erred in giving the instructions asked by plaintiff. It should have appeared from the evidence, that the failure of the railway company to make or repair fences along its right of way, as required by

law, was contributory to an injury to the animals on its track, or the plaintiff cannot recover. In other words, the animals must have entered at a point where a fence was required and was wanting or defective, and if the fence was, or was not, defective at that point its sufficiency or insufficiency at other points is wholly immaterial. Where the cattle come upon the track at one point and wander to another, whence they are killed, the necessity and sufficiency of the fence at the place of entry, and not the place of killing, determine the liability. *Ehret v. Railroad*, 20 Mo. App. 258; *Cecil v. Railroad*, 47 Mo. 246; *Razor v. Railroad*, 73 Mo. 471; *Snider v. Railroad*, 73 Mo. 463; *Nance v. Railroad*, 79 Mo. 197; *Moore v. Railroad*, 81 Mo. 502; *Ward v. Railroad*, 91 Mo. 170; *Railroad v. Bennett*, 19 Wis. 160; *Bremmer v. Railroad*, 61 Wis. 114.

*J. D. Hostetter*, for the respondent.

Respondent is entitled to recover notwithstanding he is not an adjoining nor a next adjoining land-owner. The evidence is conclusive that the cattle came upon the railroad track, not as trespassers from any adjacent fields, but from some point on the same public highway on which respondent's farm is situated, by reason of a failure of the railroad company to separate such public highway from its track by a lawful fence. This duty to fence its road along the public highway exists in favor of every person whose animals come upon the track from the highway by reason of such failure to fence. *Rozzelle v. Railroad*, 79 Mo. 349; *Rutledge v. Railroad*, 78 Mo. 287; *Morris v. Railroad*, 79 Mo. 370; *Peddicord v. Railroad*, 85 Mo. 160, and cas. cit.; *Smith v. Railroad*, 25 Mo. App. 113, and cas. cit. And it is the duty of the railway company to separate its track from the public highway by a lawful fence notwithstanding such highway may intervene between the track and inclosed.

or cultivated fields. *Robinson v. Railroad*, 57 Mo. 494, and cas. cit. Defendant was required by law to fence its track where the same ran parallel or nearly so to the public road, though the right of way and track may have occupied some portion of the public road. *Humes v. Railroad*, 9 Mo. App. 588; *Rozzelle v. Railroad*, 79 Mo. 349; *Patton v. Railroad*, 14 Mo. App. 509; *Rutledge v. Railroad*, 78 Mo. 286; *Union v. Railroad*, 79 Mo. 370; R. S. 1879, 809. If defendant was legally bound to fence its road at the place of accident it was equally bound to construct and maintain cattle-guards sufficient to prevent animals from getting on the railroad. R. S. 1879, sec. 809.

ROMBAUER, P. J., delivered the opinion of the court.

The plaintiff recovered double damages under the provisions of section 809 of the Revised Statutes, for the killing of his cow and steer by the defendant's locomotive. The animals were struck at a place where a public road forty or fifty feet wide crossed the defendant's railroad at an acute angle, so as to make the space occupied by the intersection of the width of the road with the defendant's right of way cover from one hundred and fifty to two hundred feet of the defendant's tracks. The railroad at that point runs from southeast to northwest, there being enclosed fields on each side of the railroad, as well as of the public road. The railroad fence does not, on either side, run up so as to connect with the cattle-guards at the crossings. If it did so, such cattle-guards would be from one hundred and fifty to two hundred feet apart. The railroad fence, as the evidence shows, runs at most to such points where the outside lines of the defendant's right of way join the fences of adjoining owners. At these points cattle-guards are erected, which, by the uncontroverted evidence, are shown to be from three hundred to three

hundred and ninety feet apart, the eastern cattle-guard being close to the road crossing, and the western guard at a considerable distance therefrom.

It will be thus seen that there is a space between the western cattle-guard and the actual territory occupied by the public road crossing, which it was the defendant's duty to fence, under the rule stated in *Hamilton v. Railroad*, 87 Mo. 86, and *Rozzelle v. Railroad*, 79 Mo. 349, and the only point for our consideration is, whether, conceding that fact, the plaintiff's evidence is sufficient to warrant a recovery.

The cattle, when last seen, were on the public road, about a mile from defendant's road, and presumably traveling towards it. There was no evidence, whatever, where they entered upon the defendant's road-bed, whether within or without the space occupied by the public road in crossing it. That part of plaintiff's case rests on mere conjecture, wherein it is essentially different from *Hamilton v. Railroad, supra*. There is no evidence that they did or could have entered from any of the adjoining enclosed fields, and the fact, that they did so, is expressly disclaimed by plaintiff.

As the plaintiff's contention is, that the cattle were injured owing to the defendant's failure to fence its road up to the public road crossing and to connect it therewith cattle-guards, which stood in lieu of a fence, we will set the evidence out in detail for the purpose of determining whether there was any substantial evidence which entitled him to go to the jury on that theory. The only eye-witnesses of the accident were the defendant's engineer and fireman, whose evidence is referred to hereafter. The plaintiff and his witnesses testified as to the collision simply from evidence of hair and blood on the track.

It was conceded, by all the testimony, that the animals were killed by a passenger train going from east to west. The plaintiff, himself testifies: "The

Henderson v. St. Louis & Hannibal Ry. Co.

steer was killed and put off about two hundred yards maybe," and again, " It is about one hundred yards from where the animals were killed to the west cattle-guard." His witness Pritchet testifies : "The cow was carried up away inside, I suppose one hundred yards inside of a field, that is, inside of the railroad track, where it was fenced ; the steer was found outside." It will be thus seen that, upon the plaintiff's own testimony, the animals were struck within the limits of the public road, and his testimony leaves it entirely to conjecture whether they entered there or not.

The defendant's engineer and fireman both positively testified that the cattle were struck by the west-bound passenger train, not only within the limits of the public road, but upon the plank crossing of said road, and that one of them was dragged by the engine clear into the adjoining field, derailing the engine. They were the only eye-witnesses of the accident, and further testified that the cattle were first noticed when the engine was within a short distance of the road crossing, and that all precautions were observed to avoid a collision, that could be, under the circumstances. Their testimony is corroborated by one Powrie, who examined the place the second morning after the killing, and found hair on the track four feet from the plank crossing and fourteen feet within the limits of the public road. Their testimony is nowise impeached or contradicted, either by the evidence of the plaintiff, or by circumstances ; on the contrary, it is corroborated as far as the plaintiff's evidence, which is mainly conjectural, and surrounding circumstances can furnish any corroboration.

Upon this showing of the facts by the plaintiff, the defendant's demurrer to the evidence should have been sustained, and upon all the evidence, the defendant was entitled to a verdict. The defendant had no right to close the public highway by a fence, and it was immaterial whether the highway was one *de jure* or *de facto*.

*Luckie v. Railroad,* 76 Mo. 639.   If the cattle entered
upon the track where the defendant was under no obli-
gation to fence, and received their injuries owing to
such entry alone, the plaintiff could not recover under
section 809 of the statute.   *Cecil v. Railroad,* 47 Mo.
246 ; *Ehret v. Railroad,* 20 Mo. App. 258, and cases cited.

These observations necessarily lead to a reversal of
the judgment, as verdicts unsupported by substantial
evidence cannot stand.   We have not hesitated to
vacate verdicts, even where they were not wholly devoid
of evidence to support them, on the ground of prejudice
or mistake, in other cases.   *Lionberger v. Pohlman,*
16 Mo. 392, 398 ; *Borgraefe v. Knights of Honor,* 22
Mo. App. 127 ; s. c., 26 Mo. App. 218 ; *Friesz v. Fallon,*
24 Mo. App. 439.   So has the supreme court.   *Price v.
Evans,* 49 Mo. 396 ; *Spohn v. Railroad,* 87 Mo. 74. And
we cannot supply a different rule simply because the
defendant happens to be a railroad corporation.

It results that the judgment must be reversed.   All
the judges concurring, it is so ordered.